STATE v. FRANKLIN

[224 N.C. App. 337 (2012)]

STATE OF NORTH CAROLINA

v.

MALIK SHAHEEM FRANKLIN, Defendant

No. COA12-412

Filed 18 December 2012

**1. Appeal and Error—writ of certiorari—untimely appeal**

The Court of Appeals granted defendant's petition for a writ of *certiorari* under N.C.R. App. P. 21(a) and considered the issues presented in his brief as defendant lost his right to appeal by failure to take timely action.

**2. Jurisdiction—subject matter—written order not materially different from oral ruling**

The trial court had subject matter jurisdiction to enter its written order in a trafficking in drugs, possession with intent to sell or deliver a controlled substance, and conspiracy to traffic in drugs case because it did not differ materially from the court's oral ruling. The written order merely reduced the oral ruling to writing.

**3. Search and Seizure—motion to suppress—passenger in car—probable cause—scope and duration of search**

The trial court did not err in a trafficking in drugs, possession with intent to sell or deliver a controlled substance, and conspiracy to traffic in drugs case by denying defendant's motion to suppress. Defendant did not have standing to challenge the search of the car since he was a passenger. Further, defendant did not contest that the officer acted with probable cause to believe that defendant committed a traffic infraction in failing to wear a seatbelt. Finally, the scope and duration of the stop were not overly extended.

Judge BEASLEY concurring in separate opinion.

Judge ELMORE dissenting in separate opinion.

Appeal by defendant from judgment entered on or about 8 November 2011 by Judge Hugh B. Lewis in Superior Court, Mecklenburg County. Heard in the Court of Appeals 10 October 2012.

**STATE v. FRANKLIN**

[224 N.C. App. 337 (2012)]

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Robert C. Montgomery and Assistant Attorney General Joseph L. Hyde, for the State.*

*Michele Goldman, for defendant-appellant.*

STROUD, Judge.

After his motion to suppress was denied, defendant pled guilty to various drug-related charges. Defendant appeals, and for the following reasons, we affirm.

## I. Background

On 28 February 2011, defendant was indicted for trafficking in drugs, possession with intent to sell or deliver a controlled substance, and conspiracy to traffic in drugs. On 8 July 2011, defendant filed a motion "to suppress any and all physical evidence seized from" him "and to suppress any statements or other evidence which was obtained[.]" On 7 November 2011, the trial court held a hearing regarding defendant's motion to suppress and orally denied the motion. On or about 8 November 2011, defendant pled guilty to all of the charges against him, and the trial court sentenced him on all of his convictions to 35 to 42 months imprisonment; at this hearing, defendant's attorney stated defendant was "appealing his denial of his motion to suppress." On 21 November 2011, the trial court filed a written order denying defendant's motion to suppress. As to defendant's appeal, defendant only appealed at the hearing regarding his guilty plea from the oral ruling regarding his motion to suppress; defendant never filed any written notices of appeal nor did he appeal in any manner from either the judgment upon which his convictions were entered or the written order regarding his motion to suppress.

## II. Notice of Appeal

[1] All of defendant's issues on appeal are concerning his motion to suppress, but since defendant did not file a notice of appeal from the judgment or after entry of the written order denying his motion to suppress, we must first address whether we have jurisdiction to consider defendant's appeal. In *Miller*, this Court stated,

> N.C. Gen. Stat. § 15A–979(b) (2009) states that: An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty. Defendant has failed to appeal from the judgment

of conviction and our Court does not have jurisdiction to consider Defendant's appeal. In North Carolina, a defendant's right to pursue an appeal from a criminal conviction is a creation of state statute. Notice of intent to appeal prior to plea bargain finalization is a rule designed to promote a fair posture for appeal from a guilty plea. Notice of Appeal is a procedural appellate rule, required in order to give this Court jurisdiction to hear and decide a case. Although Defendant preserved his right to appeal by filing his written notice of intent to appeal from the denial of his motion to suppress, he failed to appeal from his final judgment, as required by N.C.G.S. § 15A–979(b).

205 N.C. App. 724, 725, 696 S.E.2d 542, 542-43 (2010) (citations and quotation marks omitted). Accordingly, the Court dismissed defendant's appeal. *See id.* at 726, 696 S.E.2d at 543. Here, however, while defendant has not properly provided notice of appeal, he has petitioned this Court for a writ of certiorari to consider his appeal.

North Carolina Rule of Appellate Procedure 21(a) provides,

The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief.

N.C.R. App. P. 21(a). Pursuant to Rule 21(a), we grant defendant's petition for a writ of certiorari and will consider the issues presented in his brief as he lost his right to appeal "by failure to take timely action[.]" *Id.*

### III. Jurisdiction of Trial Court to Enter Order

**[2]** Defendants first argument that "the trial court lacked jurisdiction to enter its written order denying . . . [his] motion to suppress where the written order differed materially from the court's oral ruling and where it was entered after . . . [defendant] had given notice of appeal" raises two issues. (Original in all caps.) "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *State v. Herman,* ___ N.C. App. ___, ___, 726 S.E.2d 863, 866 (2012).

STATE v. FRANKLIN

[224 N.C. App. 337 (2012)]

Defendant's first issue is whether "the trial court lacked jurisdiction to enter its written order" because "the written order differed materially from the court's oral ruling[.]" The trial court stated that "[t]he State will be responsible for preparing the order in this matter[,]" and then orally found, concluded, and ruled,

> Detective Lackey of CMPD had a particular storefront noted as 3318 Tuckaseegee Road under surveillance. Two individuals left that storefront and got into an automobile and got onto the highway.
>
> After being on the highway and in movement on that highway, then at that time they put on their seat belts. The Court notes that having viewed the car the defendant and the other occupant were in, the defendant being the passenger and the other occupant being the driver, the rear window of that car was clear and unobstructed, so the officer could see movement—Detective Lackey could see movement in that car and was able to see whether or not they had their seat belts on. That is both a finding of fact and a conclusion of law.
>
> Detective Lackey contacted an Officer Frisk and asked him to conduct a traffic stop relating to the seat belt violation.
>
> When Officer Frisk initiated the stop, both occupants raised their hands in a manner that was, in Officer Frisk's opinion, one that would indicate there was some form of weapon in the automobile, something that he has noted from his nine-and-a-half years of experience. It often happens that someone has a weapon in the car.
>
> Also, backing Officer Frisk up were officers Cooper and Land. The officers conducted a record check, and during conversation with the occupants found that one or both had—the defendant had been and possibly the driver as well—had been involved in weapons charges out of Burke County.
>
> There is dispute over whether or not consent was given. The driver testified here today and said that he did not give consent, however, the Court has viewed tapes from the first patrol car in full length believes that consent was provided to the officers to quote, frisk, unquote, the car, that being looking for weapons.
>
> This was—conclusion of law. This was justifiable based on the raising of the hand hands, the officers

experienced previous criminal records involving gun charges—that limited frisk of the car looking for weapons. It was justified for public and officer's safety at that point in time.

As Officer Cooper frisked the car, he moved a can of hairspray that was laying in the gap between the seat— first off, Officer Frisk was conducting a search of all areas that are known as, quote, lunge areas, end quote. That was the limit of the search. What that means—this is, again, a mixed finding of fact and conclusion of law.

He was looking in areas that either occupant would have access to immediately for retrieving a weapon, which would include gap or valley between a seat and a center console.

In that gap or valley between the seat and center console, Officer Cooper moved a can of hairspray, which, during the movement, something rattled inside that can which is not consistent with a can of hairspray.

Utilizing his experience, he believed there to be a container of concealment that might hold a weapon, since he had seen weapons that were small enough to fit inside that can of hairspray. Part of the hairspray can was able to be removed, and inside that he found a quantity of cocaine.

Therefore, the Court concludes that the stop was valid, the search was valid, and the motion to suppress is denied.

The written order denying defendant's motion to suppress was filed on 21 November 2011 and stated as follows, in pertinent part:

1.   That on February 16, of 2011, Detective Lackey with Charlotte Mecklenburg Police Department (hereinafter referred to as "CMPD") had a particular storefront under surveillance at 3318 Tuckaseegee Road in Charlotte, NC.

2.   That on this date, Detective Lackey was conducting surveillance on this location from across the street.

3.   That Detective Lackey observed the defendant leave this same storefront and get into the passenger seat of a vehicle. The driver's seat of this vehi-

cle was occupied by another individual, Olando Norman.

4.   That the vehicle Defendant was a passenger in turned onto the highway and Detective Lackey followed the vehicle.

5.   That based on the Court's observations of the video, the rear window of the vehicle was clear and unobstructed allowing Detective Lackey to see movement in the vehicle.

6.   That the vehicle was in motion on a public street or highway prior to Detective Lackey observing either the driver or the passenger put on their seatbelts.

7.   That Detective Lackey contacted CMPD Officer Frisk to make a traffic stop of the vehicle for the seatbelt violation.

8.   That Officer Frisk initiated a traffic stop of the vehicle.

9.   That upon initiating the traffic stop, both occupants in the car, including the defendant, raised their hands in a manner that indicated that they had a gun in the car.

10.  That Officer Frisk's opinion was based on nine and a half years of experience as a law enforcement officer.

11.  That CMPD Officers Cooper and Land responded in their patrol car as a back-up unit to the traffic stop initiated by Officer Frisk.

12.  That during the course of the traffic stop, the responding officers did a record check of both occupants.

13.  That based on the information received in the record check and during conversations with the occupants, including the defendant, the officers found that either one or both, the defendant and the driver, had previously been involved in weapon offenses from Burke County.

14. That based on this information, the officers removed both occupants from the vehicle and conducted a weapons frisk of both the driver and the defendant. Neither subject was detained in handcuffs following this weapons frisk.

15. That there is dispute over whether or not consent was given.

16. That the Court heard testimony from the driver of the vehicle, Olando Norman, who stated that he did not give consent to search the vehicle.

17. That the Court had an opportunity to watch the video from the first patrol car of this specific event in its entirety, including the officer requesting the driver's consent and the driver's response.

18. That Officer Cooper frisked the passenger area of the vehicle in the lunge area where a weapon could be held, including the gap or valley between the driver's seat and center console.

19. That during the course of the weapons frisk, Officer Cooper moved a hairspray can from the gap or valley between the driver's seat and the center console to continue his search.

20. That when he moved the hairspray can, Officer Cooper heard a noise coming from the can which is inconsistent with the typical contents of a can of hairspray.

21. That based on his training and experience, Officer Cooper believed that this might be a container which could conceal a weapon, since he had seen weapons which could fit inside this container of hairspray.

22. That the bottom of this hairspray can was loose and when Officer Cooper unscrewed the bottom of the can, he located what he believed to be crack cocaine.

Based upon these findings of fact, the trial court denied defendant's motion to suppress, concluding:

1. That during his observation, Detective Lackey could see movement in the vehicle that the defendant was a passenger in and was able to see whether or not the occupants had their seatbelts on.

2. That the traffic stop of the vehicle for a seatbelt violation was valid.

3. That a limited frisk of the car was justifiable based on the occupants raising their hands when Officer Frisk initiated the traffic stop and the information the officers received both from their record check and from speaking with the defendant and the driver about previous criminal charges involving guns.

4. That the frisk of the "lunge areas" of the vehicle allowed the officer to look in areas that either occupant would have immediate access to for retrieving a weapon, including the gap or valley between the seat and the center console, and was justifiable by concerns of an immediate risk to public and officer safety.

5. That the Court finds, after viewing the video of the traffic stop, that the driver, Olando Norman, gave consent to "frisk" the car to look for weapons.

We find no "material" difference between the oral ruling and written order.

Defendant's second issue is that "the trial court lacked jurisdiction to enter its written order" because "the written order . . . was entered after . . . [defendant] had given notice of appeal." We note the contradiction between defendant's issues as stated in the record on appeal and his argument, as in "DEFENDANT'S PROPOSED ISSUES ON APPEAL[,]" defendant claimed that "[t]he trial court erred when it failed to enter written findings on its denial of . . . [defendant's] motion to suppress evidence in violation of N.C. Gen. Stat. § 15A-977(f)[;]" the record as originally filed with this Court on 5 April 2012 did not include the suppression order entered on 21 November 2011. Thus, defendant had originally intended to appeal on the basis that the trial court failed to enter a written order. But on 31 May 2012, defendant's counsel filed a motion to amend the record on appeal to add the suppression order entered on 21

November 2011, and that amendment was allowed. Thus, defendant now argues that the trial court did not have jurisdiction to enter the written order that he first claimed that the trial court erred by failing to enter.

In any event, a similar argument was made and rejected in *State v. Smith*:

> Defendant next assigns as error the trial court's entry, over six months post-trial, of a written order denying defendant's motion to suppress identification testimony. He argues that this order should be held void as entered out of term without the consent of the parties pursuant to *State v. Boone*, 310 N.C. 284, 286-91, 311 S.E.2d 552, 554-55 (1984). The order, however, is simply a revised written version of the verbal order entered in open court which denied defendant's motion to suppress decedent's wife's identification testimony. It was inserted in the transcript in place of the verbal order rendered in open court. In *State v. Horner*, 310 N.C. 274, 278-79, 311 S.E.2d 281, 285 (1984), we held that the trial court's order denying defendant's motion to suppress items of physical evidence was not improperly entered out of session and out of district where the court passed on each part of the motion to suppress in open court as it was argued and later reduced its ruling to writing, · signed the order, and filed it with the clerk. The procedure here did not differ substantively from that in *Horner*. We thus overrule this assignment of error.

320 N.C. 404, 415-16, 358 S.E.2d 329, 335 (1987) (quotation marks omitted). Accordingly, we conclude that the trial court had jurisdiction to enter its written order as it merely "reduced its [oral] ruling to writing[.]" *Id.* at 415, 358 S.E.2d at 335. This argument is overruled.

## IV. Motion to Suppress

[3] Defendant raises two arguments regarding his motion to suppress. *State v. Campbell* sets forth the appropriate standard of review:

> It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the

evidence is conflicting. In addition, findings of fact to which defendant failed to assign error are binding on appeal. Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task is to determine whether the trial court's conclusions of law are supported by the findings. The trial court's conclusions of law are reviewed *de novo* and must be legally correct.

188 N.C. App. 701, 704, 656 S.E.2d 721, 724 (2008) (citations, quotation marks, and brackets omitted).

Defendant's argument challenges a finding of fact in order to contest the search of the car in which defendant was a passanger. We are mindful that

[a]lthough a passenger who has no possessory interest in the vehicle has standing to challenge the propriety of a stop of the vehicle, *Brendlin v. California*, 551 U.S. 249, 251, 168 L.Ed.2d 132, 136 (2007) ("When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment. We hold that a passenger is seized as well and so may challenge the constitutionality of the stop."), or to challenge a "detention beyond the scope of the initial seizure," *State v. Jackson*, ___ N.C. App. ___, ___, 681 S.E.2d 492, 496 (2009), *our Courts have never held that a passenger who has no possessory interest in the vehicle or contents has standing to challenge a search of the vehicle.*

*State v. Mackey*, 209 N.C. App. 116, 124-25, 708 S.E.2d 719, 724 (emphasis added) (ellipses omitted), *disc. review denied*, 365 N.C. 193, 707 S.E.2d 246 (2011). Accordingly, defendant does not have standing to challenge the search of the car he was in as a passenger, and as such we will not consider this argument on appeal. *See id.*

Defendant's next argument is that

the stop for a seatbelt violation was a pretext for conducting a narcotics investigation. The duration of the stop was measurably extended by the officers' ulterior motive which was to investigate their hunch that Mr. Franklin possessed narcotics. This delay, unsupported

by reasonable suspicion, violated Mr. Franklin's constitutional rights.

(Original in all caps.) Defendant's argument raises two separate issues: the first is that the stop was pretextual and the second is that the scope of duration of the stop was extended beyond that justified by a stop for a seatbelt violation.

As to the stop being pretextual, a similar argument was made and rejected in *State v. Parker:*

> Because Detective Darisse acted with probable cause to believe that defendant committed a traffic infraction, his initial stop of defendant's car did not violate the Fourth Amendment. It is irrelevant to the validity of the stop that Detective Darisse's primary reason for following defendant was that he had received a complaint that defendant was trafficking methamphetamine or that Detective Darisse did not subsequently issue defendant a citation for speeding.

*See State v. Parker*, 183 N.C. App. 1, 11, 644 S.E.2d 235, 243 (2007) (citations and quotation marks omitted). Here, defendant does not contest that Officer Frisk "acted with probable cause to believe that defendant committed a traffic infraction" in failing to wear a seatbelt, and thus "[i]t is irrelevant to the validity of the stop [if Office Frisk's] primary reason for following defendant was that" he believed defendant may have been in possession of illegal drugs. *Id.*

As to the scope and duration of the stop, even considering the facts only as argued by defendant, the entire stop from pulling the car over until defendant was arrested took approximately ten minutes and only involved a question involving whether defendant or Mr. Norman had weapons and a phone call with another officer while Officer Frisk simultaneously ran a "criminal history, warrant and license checks[;]" we do not deem the stop to be overly extended in duration. The Fourth Circuit Court of Appeals has recently summarized the law regarding this type of stop as follows:

> The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure

**STATE v. FRANKLIN**

[224 N.C. App .337 (2012)]

of persons within the meaning of this provision. Because an ordinary traffic stop is a limited seizure more like an investigative detention than a custodial arrest, we employ the Supreme Court's analysis for investigative detention used in *Terry v. Ohio*, 392 U.S. (1968), to determine the limits of police conduct in routine traffic stops.

> Under *Terry's* dual inquiry, after asking whether the officer's action was justified at its inception, we ask whether the continued stop was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. With regard to scope, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. With regard to duration, although the reasonable duration of a traffic stop cannot be stated with mathematical precision, a stop may become unlawful if it is prolonged beyond the time reasonably required to complete its mission. Thus, we evaluate whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. To prolong a traffic stop beyond the scope of a routine traffic stop, an officer must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place. This requires either the driver's consent or a reasonable suspicion that illegal activity is afoot.

> Although the scope and duration components of Terry's second prong require highly fact-specific inquiries, the cases make possible some generalizations. *When a police officer lawfully detains a vehicle, police diligence involves requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket.* The officer may also, in the interest of personal safety, request that the passengers in the vehicle provide identification, at least so long as the request does not prolong the seizure. Similarly, *the officer may*

> *inquire into matters unrelated to the justifica-*
> *tion for the traffic stop, and may take other*
> *actions that do not constitute searches within the*
> *meaning of the Fourth Amendment, such as con-*
> *ducting a dog-sniff of the vehicle, but again only*
> *so long as those inquiries or other actions do not*
> *measurably extend the duration of the stop.*

*U.S. v. Vaughan,* ___ F.3d ___, ___ (4th Cir. 2012) (Nov. 29, 2012) (No. 11-4863) (emphasis added) (citations, quotation marks, and brackets omitted).

Considering *"Terry's* dual inquiry," we first conclude that Officer Frisk's "action was justified at its inception" as he could properly stop the vehicle defendant was in for a traffic violation. *Id.* at ___. Defendant argues that the scope of the stop was not sufficiently limited, where Officer Frisk asked defendant and Mr. Norman if they had weapons and spoke with another officer while he ran a "criminal history, warrant and license checks" with all of this taking about ten minutes. Under Terry's second inquiry, "whether the continued stop was sufficiently limited in scope and duration[,]" we conclude that it was sufficiently limited. *Id.* at ___. Officer Frisk took only the actions which would be required by "police diligence[:] requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket." *Id.* at ___ This argument is overruled.

## V. Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Judge ELMORE dissents by separate opinion.

Judge BEASLEY concurs by separate opinion.

ELMORE, Judge dissenting.

I respectfully disagree with the decision of the majority to affirm defendant's convictions. I agree with defendant that the stop was pretextual and unconstitutional, and therefore the evidence found during the stop should have been suppressed. I also conclude that the duration of the stop was unreasonable. As a result, I would vacate defendant's convictions which were entered upon his guilty plea.

**STATE v. FRANKLIN**

[224 N.C. App. 337 (2012)]

In concluding that the stop was not pretextual, the majority relies on *State v. Parker*, 183 N.C. App. 1, 644 S.E.2d 235 (2007). I find the case *sub judice* to be distinguishable.

In *Parker*, the defendant argued that the trial court erred in denying his motion to suppress evidence seized during a search of his car. There, officers seized drugs, a weapon, and drug paraphernalia from the defendant's vehicle, after searching the vehicle pursuant to a traffic stop. The defendant argued that the traffic stop was only a pretext to search his car for drugs. At the suppression hearing, the State offered the testimony of the officer who conducted the traffic stop. He testified that "he stopped defendant on Highway 268 after observing defendant drive approximately sixty miles per hour in a forty-five mile per hour speed zone, and observing defendant pass another vehicle at approximately eighty miles per hour in a fifty-five mile per hour speed zone." *Id.* at 3, 644 S.E.2d at 238. The trial court then denied the defendant's motion to suppress and this Court affirmed. *Id.* at 5-6, 644 S.E.2d at 240. We held that "[b]ecause Detective Darisse acted with 'probable cause' to believe that defendant committed a traffic infraction, his initial stop of defendant's car did not violate the Fourth Amendment[]" and as a result, "[i]t is irrelevant to the validity of the stop that Detective Darisse's primary reason for following defendant was that he had received a complaint that defendant was trafficking methamphetamine[.]" *Id.* at 11, 644 S.E.2d at 243.

I conclude that such probable cause of a traffic infraction, necessary to warrant a traffic stop of the vehicle in which defendant was riding, did not exist here. Here, the vehicle was stopped for an alleged seatbelt violation. However, the officer who made the stop, Officer Frisk, never witnessed the driver of the vehicle or defendant without their seatbelts properly secured. During the suppression hearing, Officer Frisk was asked "when you saw the people in the car, they both were wearing their seat belts; is that correct?" And he replied, "Yes, sir." Officer Frisk further admitted that while he was following the vehicle he "hadn't observed any other traffic problems[.]"

As such, I am unable to agree that Officer Frisk possessed probable cause to conduct a traffic stop of the vehicle. I agree with defendant that the alleged seatbelt violation was a pretext for the stop. Accordingly, I conclude that the trial court erred in denying defendant's motion to suppress. I would vacate defendant's convictions.

Further, I disagree with the decision of the majority to overrule defendant's argument regarding the duration of the stop. Turning to

STATE v. FRANKLIN

[224 N.C. App. 337 (2012)]

that issue, assuming *arguendo* that the traffic stop was not pretextual, I conclude that the duration of the stop was unreasonable. Here, the record shows that both parties appear to agree that the stop lasted somewhere between 10 to 12 minutes. The majority of this delay was caused by Officer Frisk's decision to run both the driver's and defendant's information through 3 "different systems to check for different things[.]" According to Officer Frisk he used "NCIC, CJ Leads, KB Cops," to check for any outstanding arrest warrants or prior arrests. I am unable to agree that the delay caused by these actions was reasonable when investigating an alleged seatbelt violation, especially when it was clear from the moment the vehicle was stopped that the violation did not in fact occur.

In *State v. Mendez*, an unpublished opinion by this Court, the officer conducted a traffic stop of the defendant's vehicle under suspicions of impaired driving. We held on appeal that the traffic stop was considered "completed" upon the officer finding no evidence of impairment and that the driver's license proved to be valid. ___ N.C. App. ___, 718 S.E.2d 423 (2011) (unpublished). By this same reasoning, Officer Frisk's stop of the vehicle was completed almost immediately after observing both occupants wearing their seatbelts. This Court has held that "[o]nce the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay." *State v. Falana*, 129 N.C. App. 813, 816, 502 S.E.2d 358, 360 (1998) (citation omitted). I am unable to find such evidence in the record here. Likewise, I conclude that checking 3 different systems for outstanding warrants or prior arrests is unreasonable when investigating an alleged seatbelt violation. *See Id.* at 816, 501 S.E.2d at 360 ("the scope of the detention must be carefully tailored to its underlying justification").

BEASLEY, Judge concurring with separate opinion.

While I generally agree with the majority's analysis, I write separately to address this Court's jurisdiction.

This Court should deny Defendant's petition for writ of certiorari. There are three bases on which this Court can grant certiorari: "when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to N.C.G.S. § 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief." N.C. R. App. P. 21(a)(1).

Defendant's notice of appeal was timely. The record shows Defendant's appellate entries were filed 8 November 2011, the same day that he pled guilty. The motion to suppress was orally denied on 7 November 2011, and the written order was entered 21 November 2011. The Transcript of Plea clearly indicates that "Defendant reserve[d] his right to appeal the denial of the motion to suppress."

As to this Court's jurisdiction, in *State v. Pimental*, 153 N.C. App. 69, 76, 568 S.E.2d 867, 871 (2002), our Court stated, "[i]f defendant. wished to preserve his right to appeal the denial of those motions to suppress, defense counsel need only have insisted that the Transcript of Plea state that defendant was reserving his right to appeal the Court's **denial of his motions to suppress** pursuant to N.C.G.S. § 15A-979(b)." (internal quotation marks omitted and emphasis added). The Transcript of Plea in this case states that "Defendant reserve[d] his right to appeal the denial of the motion to suppress."

*State v. Miller*, 205 N.C. App. 724, 725, 696 S.E.2d 542, 542-43 (2010), however, states that the defendant **must appeal** from "**his judgment of conviction**." (emphasis added). It seems to be a matter of semantics that Defendant must appeal from the "judgment of conviction" in order to preserve his appeal from the denial of the motion to suppress under N.C. Gen. Stat. § 15A-979(b). His appeal from the judgment appears to be implied by his appeal on the motion to suppress. This panel, however, cannot overrule another panel of this Court. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

I would note, though, that *Miller* cites *State v. Taylor*, 2010 WL 1960851 (unpublished). *Taylor* engages in statutory interpretation, devoting all of one paragraph to deciding that the defendant did not appeal from his conviction when he did not appeal in open court and only later filed a written notice of appeal that did not include the judgment. *Miller* then cites *State v. Turner*, 305 N.C. 356, 361-62, 289 S.E.2d 368, 372 (1982), for a proposition that it does not support.

While G.S. 15A-979(c) accords the state the right to appeal from a pretrial order granting a motion to suppress, the statute does not accord a defendant the right to appeal from an order denying the motion. G.S. 15A-979(b) provides that an order denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty.

*Id. Turner* was noting that the defendant could not appeal from the motion granting suppression of the evidence since there had not yet been a judgment of conviction, not that the defendant had *failed* to appeal from the judgment of conviction where one actually existed. *Id.* Likewise, *State v. Tate*, 300 N.C. 180, 183, 265 S.E.2d 223, 226 (1980), is misinterpreted by *Miller.*

> When the motion to suppress must be and is made *in limine* or can be and is made *in limine,* then the defendant can appeal if the motion is denied and he enters a plea of guilty, G.S. 15A-979(b), and the State can appeal if the motion is granted, G.S. 15A-1445 (which refers to G.S. 15A-979).

*Id.* I write separately to point out the tension between N.C. Gen. Stat. § 15A-979(b), *Pimental,* and *Miller* but believe that Defendant properly preserved his right to appeal. Thus, I would consider Defend-ant's appeal as of right rather than based on his petition for writ of certiorari.