An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-556

NORTH CAROLINA COURT OF APPEALS

Filed:  4 March 2014

STATE OF NORTH CAROLINA

v.

DAMIEN NEWELL VAZQUEZ

Mecklenburg County
Nos. 11 CRS 3173-74, 12462

Appeal by defendant from judgments entered 16 January 2013 by Judge Forrest D. Bridges in Mecklenburg County Superior Court.  Heard in the Court of Appeals 10 October 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Robert D. Croom, for the State.*

> *The Law Office of Bruce T. Cunningham, Jr., by Amanda S. Zimmer, for Defendant.*

ERVIN, Judge.

Defendant Damien Newell Vazquez appeals from judgments sentencing him to a term of 84 to 110 months imprisonment based upon his conviction of robbery with a dangerous weapon; to a consecutive term of 21 to 26 months imprisonment, a sentence that was suspended on the condition that Defendant be on supervised probation for 30 months and comply with certain terms and conditions, based upon his conviction of attempted second

degree kidnaping; and to a consecutive term of 17 to 21 months imprisonment, a sentence that was suspended on the condition that Defendant be on supervised probation for 30 months and comply with certain terms and conditions, based upon his conviction of possession of a firearm by a felon. On appeal, Defendant contends that the trial court erred by denying his motion to suppress certain evidence seized from his person on the grounds that the evidence in question was obtained as the result of a violation of his federal and state constitutional right to be free from unreasonable searches and seizures. After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that the trial court's judgments should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

At approximately 11:03 a.m. on 23 December 2010, officers of the Charlotte-Mecklenburg Police Department received a report that a robbery had occurred at Starlight Technologies, an internet sweepstakes business located on Wilkinson Boulevard in Charlotte. As a result of the fact that he was already in the area, Officer Ryan Keith Nicholson of the Charlotte-Mecklenburg Police Department arrived at Starlight Technologies within a

minute or two after receiving a report that the robbery had occurred.

After his arrival at Starlight Technologies, Officer Nicholson learned from an employee named Jeffery Dorton that the robbery had been committed by a black male who was approximately five feet, six inches tall and who was wearing dark pants, a gray hooded sweatshirt, and a face mask made of black material. According to Mr. Dorton, the perpetrator had been in possession of a handgun and had left the store on foot and had run through a parking lot towards Midland Avenue. After receiving this information, Officer Nicholson sent out a radio transmission containing the suspect's description while other officers set up a perimeter and began patrolling the area surrounding Starlight Technologies.

Approximately four minutes after Officer Nicholson radioed the suspect's description to other officers, Officer Troy Hurst of the Charlotte-Mecklenburg Police Department, who was working in an undercover capacity, informed the other officers in the area that he had spotted an individual matching the description of the person being sought in connection with the Starlight Technologies robbery. More specifically, Officer Hurst indicated that, within three to five minutes after receiving Officer Nicholson's radio call, he had seen a subject walk

between two houses that were located within half a mile of the Starlight Technologies building, look cautiously back towards Midland Avenue, and put his hands on his knees in an attempt "to catch his breath" as if he had been running. According to Officer Hurst, the individual in question was tall and slim. However, the suspect was not wearing a gray hoodie.

Officer Hurst observed the suspect move through a grass-covered area and walk towards the corner of a house after spotting a marked police car. After observing this individual, Officer Hurst sent out a dispatch indicating that someone needed to make contact with "this gentleman." Although he spent 15 to 20 minutes in the area, Officer Hurst did not observe anyone else matching the description of the suspect in the Starlight Technologies robbery during that time.

After Officer Hurst indicated that the person whom he had been observing should be stopped, Officer B.K. Lewis of the Charlotte-Mecklenburg Police Department stopped an individual who turned out to be Defendant. Approximately ten seconds later, Officer Nicholson arrived at the scene. According to Officer Nicholson, while Defendant was wearing dark pants, he did not have a gray hooded sweatshirt. At or shortly after his arrival at the scene of the stop, Officer Nicholson placed his hand on Defendant's chest and felt Defendant's heart beating

fast, a fact that suggested that Defendant had just been engaged in strenuous physical activity.

After being detained, Defendant consented to a search of his person, during which investigating officers seized $990 in cash. At that point, the investigating officers contacted Mr. Dorton, who confirmed that nearly $1,000 had been taken during the robbery. Upon receiving this information, investigating officers transported Defendant to Starlight Technologies, where Mr. Dorton identified Defendant as the individual who had committed the robbery.

## B. Procedural Facts

On 18 January 2011, the Mecklenburg County grand jury returned bills of indictment charging Defendant with one count of robbery with a dangerous weapon and one count of attempted second degree kidnaping. On 28 February 2011, the Mecklenburg County grand jury returned a bill of indictment charging Defendant with possession of a firearm by a felon. On 28 July 2011, Defendant filed a motion seeking to have all evidence seized from his person following his detention suppressed on the grounds that the evidence in question had been obtained as the result of a violation of his state and federal constitutional right to be free from unreasonable searches and seizures. Defendant's suppression motion came on for hearing before the

trial court on 16 January 2013. Following the conclusion of the hearing concerning the merits of Defendant's suppression motion, the trial court entered a written order denying Defendant's motion on 17 January 2013.

After the trial court indicated its intention to deny his suppression motion, Defendant entered into a plea agreement with the State pursuant to which he agreed to plead guilty to all of the charges that had been lodged against him on the understanding that sentencing would be in the discretion of the trial court and that he had reserved the right to seek appellate review of the denial of his suppression motion. Based upon Defendant's guilty pleas, the trial court entered judgments sentencing Defendant to a term of 84 to 110 months imprisonment based upon his conviction of robbery with a dangerous weapon; to a consecutive term of 21 to 26 months imprisonment, with this sentence being suspended on the condition that Defendant be on supervised probation for 30 months, pay the costs and attorney's fees of $1,750, serve a term of six months imprisonment, comply with the usual terms and conditions of probation, and not go on or about the premises of Starlight Technologies, based upon his conviction of attempted second degree kidnaping; and to a consecutive term of 17 to 21 months imprisonment, with this sentence being suspended on the condition that Defendant be on

supervised probation for 30 months, serve a term of two month imprisonment, and comply with the usual terms and conditions of probation, based upon his conviction of possession of a firearm by a felon on 16 January 2013. Defendant noted an appeal to this Court.[1]

## II. Legal Analysis

In his brief, Defendant advances two challenges to the denial of his suppression motion. As an initial matter, Defendant argues that the trial court erred by finding that Officer Nicholson had observed Defendant walking in the area around Starlight Technologies on the grounds that Officer Hurst, rather than Officer Nicholson, had made these observations. Secondly, Defendant contends that Officer Lewis did not have a reasonable articulable suspicion that Defendant had been engaged in criminal activity at the time that he stopped Defendant.

---

[1]As the record clearly reflects, Defendant erroneously noted his appeal from the trial court's decision to deny his suppression motion rather than the trial court's judgments. *State v. Miller*, 205 N.C. App. 724, 725, 696 S.E.2d 542, 542-43 (2010). In recognition of this error, Defendant has petitioned this Court for the issuance of a writ of *certiorari* authorizing review of his challenges to the trial court's judgments. In view of the fact that Defendant's "right to prosecute an appeal has been lost by [his] failure to take timely action," N.C.R. App. P. 21(a)(1), through no fault of his own, we now grant the requested writ and will review Defendant's challenges to the denial of his suppression motion on the merits. *E.g.*, *State v. Franklin*, __ N.C. App. __, __, 736 S.E.2d 218, 220, (2012), *aff'd by equally divided vote on other grounds*, __ N.C. __, __ S.E.2d __ (2013).

Although Defendant is correct in noting that the challenged finding of fact lacked adequate evidentiary support, we do not believe that Defendant has established that he is entitled to relief from the trial court's order based upon these challenges.

## A. Standard of Review

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)). "While the trial court's factual findings are binding if sustained by the evidence, the court's conclusions based thereon are reviewable *de novo* on appeal." *State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000) (citing *State v. Mahaley*, 332 N.C. 583, 592-93, 4232 S.E.2d 58, 64 (1992), *cert. denied*, 513 U.S. 1089, 115 S. Ct. 749, 130 S.E.2d 649 (1995)). Thus, our task in reviewing Defendant's challenge to the trial court's judgments is to determine whether the trial court's findings of fact have adequate evidentiary support and, if so, whether the conclusions of law that the trial court made based upon these factual findings rest upon a correct application of the applicable law.

## B. Specific Challenges to the Trial Court's Order

## 1. Finding of Fact No. 4

In Finding of Fact No. 4, the trial court found that:

> As Nicholson drove through a neighborhood about 1/4 mile from the crime scene, he spotted the Defendant walking between [two] houses and looking back toward the crime scene. Defendant also bent over and placed his hands on his knees, attempting to catch his breath as if he had been running. Defendant was wearing dark pants, but was not wearing a gray hooded sweatshirt.

However, as the record reflects, Officer Hurst, instead of Officer Nicholson, made these observations. As Officer Nicholson testified, Defendant had already been stopped by Officer Lewis when he first saw him. For that reason, the trial court's finding that Officer Nicholson was the officer who initially observed Defendant in the area around Starlight Technologies after the robbery clearly lacks adequate record support. As a result, as Defendant argues, this portion of Finding of Fact No. 4 is not binding upon us for purposes of appellate review. However, for the reasons set forth below, our determination to this effect does not necessitate an award of appellate relief.

## 2. Reasonable Articulable Suspicion

"A police officer may effect a brief investigatory seizure of an individual where the officer has [a] reasonable articulable suspicion that a crime may" have been committed.

*State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, 555 U.S. 914, 129 S. Ct. 264, 172 L. Ed. 2d 198 (2008). In making this determination:

> Courts must consider "'the totality of the circumstances-the whole picture'" in making the determination as to whether a reasonable suspicion to make an investigatory stop existed at the time the stop was made.
>
> The totality of the circumstances test must be viewed through the prism of a reasonable police officer standard; that is, the reviewing court must take into account an officer's training and experience. Thus, a police officer must have developed more than an "'unparticularized suspicion or hunch'" before an investigatory stop may occur.

*State v. Willis*, 125 N.C. App. 537, 541, 481 S.E.2d 407, 410 (1997) (quoting *State v. Watkins*, 337 N.C. 437, 441-42, 446 S.E.2d 67, 70 (1994)) (citations omitted). In recognition of the fact that law enforcement officers do not work in isolation, this Court has identified three ways in which the required reasonable articulable suspicion may be developed:

> (1) the officer making the stop has a reasonable suspicion, based on his personal observations, that criminal conduct has occurred, is occurring, or is about to occur; (2) the officer making the stop has received a request to stop the defendant from another officer, if that other officer had, prior to the issuance of the request, the necessary reasonable suspicion; (3) the

> officer making the stop received, prior to the stop, information from another officer, which, when combined with the observations made by the stopping officer, constitute the necessary reasonable suspicion.

*State v. Battle*, 109 N.C. App. 367, 371, 427 S.E.2d 156, 159 (1993). Although Defendant contends that "[n]one of the officers involved in this case had sufficient information to form reasonable suspicion," we believe that Officer Lewis had a sufficient basis to justify detaining Defendant given the content of the collective knowledge possessed by all of the officers involved in the investigation of the Starlight Technologies robbery and the fact that he was requested to detain Defendant based upon that collective knowledge.

The trial court's findings of fact did not explicitly state the reason that Officer Lewis decided to stop Defendant. "However, where evidence is uncontroverted and the facts not in dispute, a trial court is not required to make findings of fact, even when provided for by statute or case law." *State v. Futrell*, 112 N.C. App. 651, 665, 436 S.E.2d 884, 891 (1993). In light of this basic principle, we have, on other occasions, evaluated the undisputed evidence presented at a suppression hearing for the purpose of determining whether the trial court correctly denied a defendant's suppression motion despite the absence of particular findings of fact in the trial court's

order. *E.g.*, *State v. Phillips*, 300 N.C. 678, 685-86, 268 S.E.2d 452, 457 (1980) (holding that the trial court did not, despite a failure to make findings of fact addressing a certain issue, commit prejudicial error given that it "specifically conclude[d] that the officer had probable cause to effect the arrest" and that such "conclusion [was] based upon the State's undisputed evidence"). As a result, given that the testimony given by the investigating officers at the suppression hearing was undisputed,[2] we will determine the basis for Officer Lewis' decision to detain Defendant and the extent to which he acted lawfully in doing so based upon an analysis of the undisputed record evidence without regard to the trial court's failure to correctly identify the officer who observed Defendant immediately prior to the stop and the trial court's failure to explicitly state the basis for Officer Lewis' decision to detain Defendant in its findings of fact.

As an initial matter, we must address Defendant's contention that, "[b]ecause Officer Lewis did not testify, it is not clear what information he had received." The fact that Officer Lewis did not explicitly describe the basis for his decision to stop Defendant at the suppression hearing does not

_____

[2]Although Defendant testified during the hearing that he did not consent to the search, we need not address the validity of the trial court's determination to the contrary since he has not challenged it on appeal.

compel a decision to overturn the denial of Defendant's suppression motion given that a lawful investigative detention may occur in the event that "the officer making the stop has received a request to stop the defendant from another officer, if that other officer had, prior to the issuance of the request, the necessary reasonable suspicion," *Battle*, 109 N.C. App. at 371, 427 S.E.2d at 159, and given our conclusion that Officer Lewis was entitled to stop Defendant based upon a request received from Officer Hurst. In order to reach this result, we must determine that the undisputed record evidence establishes that (1) the officer requesting that the stop be made had sufficient reasonable suspicion to justify that action and (2) directed a second officer to perform a stop after obtaining such suspicion.

The record contains undisputed evidence tending to show that Officer Hurst told Officer Lewis to stop Defendant. As we have already noted, Officer Hurst stated over his radio that the "gentleman" later determined to be Defendant should be stopped and that no one else in the area other than Defendant matched the description of the person whom he wanted to be detained. As the record clearly reflects, Officer Hurst's conduct was fully consistent with the fact that the officers involved in investigating the Starlight Technologies robbery were in

communication with each other about the course of the investigation using this means of communication for the purpose of taking joint action to apprehend the suspect. Although Officer Hurst did not provide a detailed description of the suspect or recite the information that led him to request that the stop be made in the relevant radio communication, we have no difficulty in concluding, given the close proximity in time and space between the making of Officer Hurst's request and the action taken by Officer Lewis, that the undisputed record evidence establishes that Officer Lewis detained Defendant based upon the request made by Officer Hurst.

In seeking to persuade us to reach a different result with respect to this issue, Defendant notes that the dash-cam video shown during the hearing did not contain a recording of what was being said and heard during the events depicted on that video and argues that this fact makes it impossible for us to know what information Officer Lewis received immediately prior to the detention of Defendant. As a result of the fact that the trial court noted that the audio portion of the dash-cam video recording was unavailable during the hearing, we agree with Defendant's contention that a finding that Officer Hurst requested Officer Lewis to stop Defendant cannot be based upon

the audio portion of the dash-cam video recording.[3]  However, the fact that the audio portion of the recording was not available does not detract from the fact that the undisputed record evidence other than that derived from an examination of the dash-cam video recording compels the conclusion that Officer Lewis stopped Defendant at the request of Officer Hurst.

In addition, the undisputed record evidence clearly establishes that Officer Hurst had sufficient reasonable articulable suspicion to justify making a request that Defendant be detained.  The description of the suspect in the Starlight Technologies robbery received by Officer Nicholson from Mr. Dorton and transmitted over police radio was of an armed black male who was five feet, six inches tall and wearing black pants and a gray hoodie.  At the time that he was stopped, Defendant, who is a black male, was wearing black pants.  Aside from the fact that Defendant resembled the general description of the suspect in the Starlight Technologies robbery transmitted over the radio, other evidence strongly suggests that Defendant was the individual for whom the investigating officers were looking. Defendant was seen in close proximity to the location at which

_____

[3]Although we do not base our decision with respect to the reason that Officer Lewis stopped Defendant on this fact, we note that Officer Hurst described the subject whom he wished to have stopped as wearing a black shirt with gray sleeves over the radio and that Defendant was wearing a black shirt with gray sleeves when Officer Lewis stopped him.

the robbery had occurred and was breathing sufficiently hard to suggest that he had been running within approximately five minutes after the robbery had occurred. At the time that Officer Hurst saw him, Defendant was near to and looking back at a street that connected the area in which he was walking to the Starlight Technologies store. Finally, Defendant was looking over his shoulder and appeared to be attempting to avoid notice from the police at the time that Officer Hurst observed him. All of this information, which Officer Hurst clearly possessed, provided ample justification for a request that Defendant be detained for further investigation.

Although Defendant argues that the description of the suspect in the Starlight Technologies robbery was too vague to support an investigative detention and that Defendant's appearance differed from that description so significantly that the decision to detain him was unwarranted, we find these arguments unpersuasive. The fact that the radioed description of the suspect indicated that he was five feet, six inches tall and that Defendant described himself as five feet, eight and three quarters inches in height is of little consequence given the limited difference between the estimated height of the suspect and Defendant's height. In addition, although the record contains no indication that Defendant possessed a firearm

at the time that he was observed by Officer Hurst, this fact does not compel us to conclude that Officer Hurst did not have adequate justification for asking that Defendant be detained given the substantial evidence tending to show that Defendant was the person for whom the officers were looking and the opportunities that Defendant had to discard the weapon after the robbery. Finally, the fact that Defendant was not wearing a gray hooded sweatshirt at the time that he was observed by Officer Hurst does not establish that Officer Hurst lacked authority to request that Defendant be stopped given the ease with which an item of clothing, such as a sweatshirt, can be removed and the fact that an exact match between a broadcast description and a suspect's appearance is not a necessary prerequisite for the existence of the reasonable articulable suspicion needed to support an investigative detention. *State v. Williams*, 195 N.C. App. 554, 559, 673 S.E.2d 394, 397 (2009). (stating that "there is no requirement that the individual stopped must match precisely the description of the suspect"). Even though we have previously held that an officer lacked the authority to detain a defendant when the description of the person for whom investigating officers were seeking was limited to a recitation of the suspect's race unaccompanied by any mention of the suspect's "age, physical characteristics, or

clothing" and when the detaining officer did "not observe [the] defendant engaging in any suspicious behavior or mannerisms," *State v. Cooper*, 186 N.C. App. 100, 107, 649 S.E.2d 664, 668 (2007), *disc. review denied*, 362 N.C. 476, 666 S.E.2d 761 (2008), Officer Hurst had substantially more information in his possession in this case. As a result, the undisputed evidence before us in this case clearly establishes that Officer Hurst had the reasonable articulable suspicion needed to support the making of a valid request that Defendant be detained.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that neither of Defendant's challenges to the denial of his suppression motion necessitate a decision to overturn that order. As a result, the trial court's judgments should be, and hereby are, affirmed.

AFFIRMED.

Judges ROBERT N. HUNTER, JR., and DAVIS concur.

Report per Rule 30(e).