An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-74

Filed: 1 September 2015

Guilford County, Nos. 13 CRS 88035, 14 CRS 24219

STATE OF NORTH CAROLINA

    v.

BRANDON TYRONE CURTIS

Appeal by Defendant from judgments entered 27 August 2014 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 11 August 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Phillip T. Reynolds, for the State.*
>
> *Sharon L. Smith for Defendant.*

STEPHENS, Judge.

*I. Factual and Procedural History*

On 18 November 2013, a Guilford County grand jury indicted Defendant Brandon Tyrone Curtis for breaking and/or entering, larceny after breaking/entering, and possession of stolen property. On 7 April 2014, the grand jury indicted Curtis for attaining the status of an habitual felon. These charges were joined for a jury trial during the 18 August 2014 criminal session of Guilford County Superior Court.

Before the trial began, Curtis filed a motion *in limine* to suppress evidence and testimony that he contended were the product of an unreasonable search of his bedroom. The evidence introduced during the *voir dire* hearing that followed tended to show that at around 11:00 a.m. on 15 August 2013, Theresa Donovan was at her home on Olympia Drive in Greensboro when she heard a crash outside, looked out her window, and saw a light-skinned black man with dreadlocks wearing white jogging pants and a black top walking down the driveway of her neighbors, Henry and Diane Chrisco, while pushing a garbage can containing a flat screen television toward a vacant house across the street. Donovan called the police and identified the man she saw as Curtis, who had lived on Olympia Drive as her neighbor for at least 10 years. Later that day, when police informed her that they had apprehended a suspect and staged a show-up identification, Donovan confirmed that the man in their custody was the same man she had seen in the Chriscos' driveway, and identified him as Curtis.

The trial court also received *voir dire* testimony from several members of the Greensboro Police Department who responded to Donovan's call. Officer Holly Smith testified that she investigated the Chrisco residence and discovered that the back door had been broken into; that the Chriscos' garbage can was missing; that when she interviewed the Chriscos they reported that two flat screen televisions, fifteen video games, two digital cameras, and miscellaneous jewelry had been taken; and

that she subsequently located several of these items inside a garbage can she found beside the vacant house across the street that Donovan had seen Curtis pushing a garbage can toward.

Officer Travis Cole testified that he and another officer attempted to locate Curtis by knocking at the front door of his home on Olympia Drive. As they waited for someone to answer, a car pulled into the driveway and the driver stated that he had received a call from Curtis, who had asked him for a ride. At that point, the front door opened and a light-skinned black man with dreadlocks who identified himself as Curtis came outside wearing a white undershirt and black shorts. Shortly thereafter, Curtis's brother, Sheron, and his stepfather, David Morris, also emerged from inside the house. The officers separated the men and obtained consent to search the residence from Morris after he confirmed that he owned it. Officer Cole testified that to determine whether anyone else was inside and assure officer safety, he conducted a brief protective sweep of the residence. During that protective sweep, Officer Cole looked into a bedroom and noticed clothing lying on the bed in plain view that appeared to match Donovan's description of the clothing worn by the suspect. Instead of entering the bedroom, which was later identified as Curtis's bedroom, Officer Cole alerted his colleagues to what he had seen and then stood by the doorway to guard this potential evidence until consent or a warrant could be obtained to conduct a search.

Detective Mark Riddle testified that, when he questioned Curtis at the police station, Curtis gave written consent for officers to search his bedroom and also waived his *Miranda* rights. Detective Riddle testified further that although Curtis initially denied any involvement in the break-in at the Chriscos' house, he eventually confessed his guilt.

At the close of the *voir dire* hearing, the trial court denied Curtis's motion to suppress the clothing that the officers found in his bedroom. In a written order entered 20 August 2014 *nunc pro tunc* 18 August 2014, the trial court provided findings of fact to support its conclusions of law that Morris had apparent authority to give consent to search the residence and did so freely, voluntarily, and without limitation; that Officer Cole "was in a place where he had a right to be when he saw what he reasonably believed to be evidence in this case in plain view" while conducting the protective sweep of the residence; and that Curtis freely and voluntarily gave consent to search his bedroom to Detective Riddle. When the State sought to admit the evidence found in Curtis's bedroom at trial, Curtis made no objection.

On 20 August 2014, the jury returned verdicts finding Curtis guilty of breaking and/or entering, larceny after breaking/entering, and possession of stolen property. Curtis then pled guilty to attaining the status of an habitual felon. After arresting judgment on the conviction for possession of stolen property, the trial court sentenced

Curtis to two consecutive terms of 84 to 113 months imprisonment. On 21 August 2014, Curtis's trial counsel filed a "Motion for Notice Appeal" [sic] with the trial court in which he "respectfully provide[d] notice of the appeal of the above entitled Motion to Suppress . . . ." Upon receiving this motion, the trial court stated:

> Let the record reflect that I just received a motion for notice of appeal in the Brandon Curtis case. [His attorney] indicated to me he was doing it.

> Notwithstanding all that, it's been filed. I'm going to treat it as a notice of appeal. I'm going to enter appellate entries. I'm taking the position that they have in fact appealed his conviction. I will appoint the appellate defender. Appeal bond is denied. . . .

## *II. Analysis*

As an initial matter, we must address the contents of Curtis's notice of appeal. Our General Statutes provide that "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction[,]" N.C. Gen. Stat. § 15A-979(b) (2013), and our Rules of Appellate Procedure require that a written notice of appeal "shall designate the judgment or order from which appeal is taken . . . ." N.C.R. App. P. 4(b). In the present case, however, Curtis's notice of appeal only references "the above entitled Motion to Suppress." Thus, in addition to an appellate brief, Curtis's appellate counsel has filed a petition for writ of *certiorari* seeking to appeal from the trial court's final judgment pursuant to Rule 21, which permits review "when the right to prosecute an appeal has been lost by failure to take timely

action[.]" N.C.R. App. P. 21(a)(1). The State opposes this petition, contending that although Curtis's notice of appeal did not fully comply with Rule 4's technical requirements, the deficiencies have nothing whatsoever to do with any failure by Curtis to take timely action in prosecuting his appeal. The State argues further that because the trial court treated the notice Curtis did provide as one applicable to its final judgment, in light of sections 7A-27(b) and 15A-1444 of our General Statutes, this Court should conclude that Curtis has not lost his right to prosecute this appeal, and therefore we should deny his petition for *certiorari* review as unnecessary.

Our prior decisions demonstrate that where a defendant expresses his intent to appeal from the denial of a motion to suppress during trial but then fails to timely file notice of appeal from the court's final judgment, absent a petition for a writ of *certiorari*, we are without jurisdiction to hear the appeal and must dismiss it. S*ee, e.g., State v. Miller*, 205 N.C. App. 724, 726, 696 S.E.2d 542, 543 (2010) (dismissing appeal where defendant noted his intent to appeal the denial of his motion to suppress prior to pleading guilty but failed to appeal from the trial court's final judgment); *see also State v. Franklin*, 224 N.C. App. 337, 339, 736 S.E.2d 218, 220 (2012) (granting petition for *certiorari* review where defendant failed to provide timely notice of appeal from final judgment), *affirmed per curiam*, 367 N.C. 183, 752 S.E.2d 143 (2013). Here, however, we agree with the State that *certiorari* review pursuant to Rule 21 is unnecessary, given that Curtis's "Motion for Notice Appeal" was timely filed and the

trial court explicitly stated that it would treat it as a notice of appeal from final judgment. Accordingly, although Curtis's petition for a writ of *certiorari* is denied, we now address the issues raised in his brief.

Counsel appointed to represent Curtis is unable to identify any issue with sufficient merit to support a meaningful argument for relief on appeal and asks that this Court conduct its own review of the record for possible prejudicial error. Curtis's counsel has shown to the satisfaction of this Court that she has complied with the requirements of *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967), and *State v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985), by advising Curtis of his right to file written arguments with this Court and providing him with the documents necessary for him to do so.

In addition, Curtis's counsel directs our attention to a potential issue on appeal, namely, whether the trial court erred in denying the motion to suppress evidence and testimony related to the search of Curtis's bedroom. However, our review of the record establishes that, after his motion *in limine* was denied, Curtis failed to object when this evidence was admitted at trial. As precedent makes clear,

> [a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial. A criminal defendant is required to interpose at least a general objection to the evidence at the time it is offered.

*State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845-46 (citations omitted), *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). Where a defendant fails to object when such evidence is offered at trial, appellate review is limited to plain error. *Id.* at 521, 453 S.E.2d at 846 (citation omitted); *see also* N.C.R. App. P. 10(a)(4) (providing that an issue that was not properly preserved for appellate review "may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error"). Here, however, after failing to properly preserve this issue for our review through a timely objection at trial, Curtis has also failed to argue plain error, and has thus waived any right to appeal the trial court's denial of his motion to suppress. *See, e.g.*, *State v. Wright*, 210 N.C. App. 697, 703, 709 S.E.2d 471, 475, *disc. review denied*, 365 N.C. 332, 717 S.E.2d 394 (2011).

Curtis has not filed any written arguments on his own behalf with this Court, and a reasonable time for him to do so has expired. In accordance with *Anders*, we have fully examined the record to determine whether any issues of arguable merit appear therefrom. We have been unable to find any possible prejudicial error and conclude that the appeal is wholly frivolous.

NO ERROR.

Judges BRYANT and DIETZ concur.

Report per Rule 30(e).